THE STATE OF OHIO, APPELLEE, *v.* HILL, APPELLANT.

(No. C-860112—Decided January 21, 1987.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Paul R. Markgraf* and *James E. Applegate,* for appellee.

*Wm. Stewart Mathews II,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

The question raised by the assignment of error is whether the trial court erred in refusing to instruct the jury on the lesser included offenses of involuntary manslaughter and negligent homicide. Defendant, Raymond D. Hill, was indicted for, and found guilty of, murder in violation of R.C. 2903.02. We hold the court did not err.

Defendant shot his mother with a Remington 30.06 bolt-action rifle (model 700), a high-powered weapon he used for hunting deer. The prosecution's evidence disclosed that Mrs. Hill's body was found sitting in a chair at the foot of

her bed, slumped to her right, with the right portions of her jaw, throat, shoulder and upper chest destroyed by the blast. The projectile had a lead core and an open-nosed copper jacket; it "exploded" on contact with the body. Parts of the projectile were found on the closet floor behind the body. The stippling of powder on the body indicated the muzzle was six to forty-two inches from the victim's face. The rifle was found on the top of a sewing machine in the adjoining living room; it had an average "pull" on the trigger which was fitted with a "saddle" that made it easier to grip. Boxes of ammunition and loose rounds were found around the house and in defendant's bedroom. There was a bullet hole in the living room floor, and two empty casings were found, one in the bedroom and one in the living room.

There were no third-party witnesses to the shooting. After the shooting, defendant drove several city blocks to the municipal police station in Fairfax and reported the shooting to an officer, saying among other things, "I got my high-powered rifle and shot her in the head."

The prosecution argued that the shooting was purposeful, either to acquire Mrs. Hill's modest house and car, or to stop his mother's harassment of him, perhaps combined with the frustration from his bankruptcy, loss of his house, and separation from his wife. He had been consuming alcohol for several hours before the event. The prosecution argued that Mrs. Hill was shot while she was dozing in her chair. One of Mrs. Hill's sisters thought the defendant "mistreated" his mother. There were unexplained bruises on her body.

Defendant's testimony was that his mother was undergoing chemotherapy for inoperable cancer and drank to excess. He claimed she was too drunk that afternoon to go to the hospital for another treatment, and that in frustration he searched the kitchen and other parts of the house for the bottle of liquor she had hidden. He never found it. He got his rifle and shot a round into the living room floor to scare her into telling him where the whiskey was, without avail. Inadvertently, he reloaded the rifle but failed to put in on "safe." She went to the chair in her bedroom, and he followed, arguing with her about giving up alcohol and pursuing the chemotherapy. He sat on a bed, across from her as they talked. When he began to stand up, the rifle discharged by mistake. He left the house in a panic and became distraught at the police station, asking the police to arrange to turn him loose so as to shoot him as he ran away.

In defense counsel's opening statement and closing argument, the defense admitted the shooting but claimed that the only question was whether it was accidental or purposeful. The jury was properly instructed on purposeful homicide and accident. Defense counsel, however, duly requested the court to instruct the jury on involuntary manslaughter in violation of R.C. 2903.04(B) and negligent homicide in violation of R.C. 2903.05. The court refused. We find no error.

Defendant was not entitled to a jury instruction on involuntary manslaughter because defendant's own testimony fails to prove the misdemeanor of aggravated menacing or any other misdemeanor that could form the underlying (or "causative") offense for involuntary manslaughter. Involuntary manslaughter may, on the proper evidence, be a lesser included offense of murder. State v. Rohdes (1986), 23 Ohio St. 3d 225, 23 OBR 382, 492 N.E. 2d 430; State v. Fee (Nov. 21, 1984), Hamilton App. No. C-840060, unreported. But the evidence in the instant case does not disclose that an aggravated menacing or any other misdemeanor was being committed at the moment the fatal shot was discharged. Defendant said he was arising from his seated position when the rifle discharged, and while he had

earlier blasted the living room floor, he was not menacing his mother at the moment of the fatal shot.

Nor was defendant entitled to a jury instruction on negligent homicide, for three reasons. First, we decided in *State v. Jenkins* (1983), 13 Ohio App. 3d 122, 13 OBR 141, 468 N.E. 2d 387, that negligent homicide is not a lesser included offense of murder regardless of whether the offense is committed with a deadly weapon. Second, assuming *arguendo* that negligent homicide is a lesser included offense of murder, from the outset of the trial defendant argued that the shooting was accidental and he did not assert negligent homicide until he asked for a jury instruction. *State v. King* (1984), 20 Ohio App. 3d 62, 20 OBR 66, 484 N.E. 2d 234. Third, making the same assumption about negligent homicide as a lesser included offense, the evidence was not sufficient for a trier of fact reasonably to find defendant was negligent, using the definition of negligence found in R.C. 2901.22(D). *State v. Rohdes, supra,* held that slipping or tripping in the snow while holding a loaded handgun (which discharged one shot that killed the victim) is an accident and not the "substantial lapse from due care" required by R.C. 2903.05, as set forth in R.C. 2901.22(D). We perceive no difference of substance between that case and the instant case.

We affirm.

*Judgment affirmed.*

DOAN, P.J., and KEEFE, J., concur.

BLACK, J., dissents.

BLACK, J., dissenting. I respectfully dissent because the defendant was entitled, in my judgment, to have the jury instructed that negligent homicide was a lesser included offense of murder in this case. I agree with the majority that he was not entitled to an instruction on in-voluntary manslaughter as a lesser included offense because the evidence failed to establish any underlying (or "causative") misdemeanor, such as aggravated menacing.

I am not persuaded by any of the three reasons cited by the majority as justification for the trial court's refusal to instruct on negligent homicide as a lesser included offense in this case. First, the decision in *State v. Jenkins* (1983), 13 Ohio App. 3d 122, 13 OBR 141, 468 N.E. 2d 387, has been overruled, in effect, by *State v. Rohdes* (1986), 23 Ohio St. 3d 225, 228, 23 OBR 382, 385, 492 N.E. 2d 430, 433. The Supreme Court concluded that Rohdes was not entitled to the requested instruction on negligent homicide, not because it could never be a lesser included offense of murder as a matter of law, but because the evidence was not sufficient to establish Rohdes' criminal negligence. Thus, by implication if not by express statement, the Supreme Court held that given the appropriate evidence, the instruction would be required.

Second, I find in the record a sufficient basis for entitlement by the defendant to an instruction on negligent homicide. Defense counsel made no claim to it in the opening statement, but defendant's own testimony was amply sufficient to raise the issue of criminal negligence. He testified that as he rose from a sitting position, the loaded and cocked rifle in his hands, without a safety on, discharged without his conscious intent. He conceded that while hunting he never carried a loaded and cocked gun without a safety on, and that a gun should never be pointed at a person at any time. A trier of fact could reasonably conclude that defendant's conduct was negligent. In brief, the evidence of negligence is patent on the record. This fact distinguishes the instant case from *State v. King* (1984), 20 Ohio App. 3d 62, 20 OBR 66, 484 N.E. 2d 234, because in that case, the evidence was that the

homicide was justified as an intentional killing in self-defense.

Third, I am convinced that the evidence of defendant's conduct in handling a high-powered hunting rifle in the narrow confines of his mother's bedroom, and in her presence, raised the issue of criminal negligence, and that a reasonable trier of fact could find beyond a reasonable doubt that defendant had acted with a substantial lack of due care in failing to perceive or avoid the risk that his handling of the rifle might cause serious injury or death to his mother. R.C. 2901.22(A). Otherwise stated, the evidence was such that reasonable minds had to determine beyond a reasonable doubt whether defendant acted purposely, or negligently, or without culpability (that is, by accident).

I would reverse the judgment below and remand the case for further proceedings.