OPINION
On May 14, 1993, James Snowden was convicted of aggravated robbery, involuntary manslaughter and felonious assault. On October 28, 1994, this Court affirmed Snowden's conviction. Statev. Snowden (October 28, 1994), Montgomery App. No. 14107, unreported. On April 15, 1999, appellant filed a motion in the trial court to merge his sentence contending the offenses were allied offenses of similar import. On April 30, 1999, the trial court denied appellant's motion and Snowden has now appealed.
The facts underlying Snowden's convictions are set out in our previous opinion:
 One evening at about ten o'clock p.m., Snowden, Terrence Brown and Bryant Ferrell, together with a woman named Michelle, were driving on Salem Avenue, approaching an Arby's restaurant. Although Snowden did not testify, he gave a statement to police that was received in evidence. According to Snowden, he had heard Ferrell talking about robbing a Kentucky Fried Restaurant on Salem Avenue, and so when Ferrell had Brown stop the car across the street from an Arby's fast-food restaurant, Snowden asked Ferrell if "there was going to be any drama." Ferrell said no, but Snowden nevertheless armed himself with a large wooden stick and went to the front door of the restaurant with Ferrell.
 The dining room had just closed. Snowden left Ferrell for a few moments, but when he returned, he saw Ferrell climbing through the drive-through window. Snowden's statement continues as follows:
 He was holding the girl around the neck and had a gun to her head. Further stated it was a shiny gun. And stated he heard Bryant [Ferrell] say get back here and open the cash register or I will blow her head off. I saw Bryant point the gun at the security officer and shoot him. I did not see if he, he fell. Referring to the security officer.
 And Mr. Snowden said at that point that he had a big stick with tape on the handle and stated he had gotten the stick out of the car when he had gotten out with Bryant.
 Said after Bryant shot the security guard, that he, being Snowden, ran to the side window. Stated at that time he saw the security officer firing at Bryant, and then saw Bryant and the girl on the floor. Mr. Snowden stated at that time he broke the side window with the stick. Asked him why he broke the window. He said so the guard could stop shooting at my friend.
 From the testimony of other witnesses, it was established that when the security guard was told to drop his weapon, he did so. When the security guard's gun hit the floor, it discharged. Ferrell then began shooting at the security guard, wounding him three times. The security guard was nevertheless to reach his gun and return fire. Ferrell was killed; so, unfortunately, was Robin Smith, Ferrell's hostage.
 Snowden and Brown were arrested and charged with Aggravated Robbery, two counts of Involuntary Manslaughter, and Felonious Assault. Each charge carried a firearm specification.
* * * *
 At the close of the State's case, both defendants moved for judgments of acquittal pursuant to Crim. R. 29. Brown's motion was sustained in its entirety, and the trial court entered judgments of acquittal on all charges against him. Snowden's motion was sustained only as it related to the Involuntary Manslaughter charge involving the death of Ferrell, the trial court ruling that because Ferrell could not have been guilty, as a principal, of his own manslaughter, Snowden could not be culpable as an aider and abettor thereof.
 The jury found Snowden guilty of all three of the charges remaining against him, but not guilty of the firearm specifications with respect to each of those charges. A judgment of conviction was entered, and Snowden was sentenced accordingly. From his conviction and sentence, Snowden appeals.
The record indicates Snowden was sentenced to an indefinite term of 6-25 years on the aggravated robbery charge, 10-25 years on the involuntary manslaughter charge, and 8-15 years on the felonious assault charge with the sentences to be served consecutively.
In a single assignment of error, appellant contends the trial court erred in refusing to merge the sentences imposed upon him because the offenses were allied offenses pursuant to R.C.2941.25.
The State of Ohio appropriately points out that appellant's assignment of error is now barred by the doctrine of res judicata because appellant should have raised the allied offense argument in his direct appeal.
To foreclose a future claim that his appellate counsel was constitutionally ineffective for failing to raise the allied offense issue earlier, we will briefly address it here.
Involuntary manslaughter and aggravated robbery are not allied offenses of a similar import. State v. Rance (1999),85 Ohio St.3d 632. Also felonious assault and aggravated robbery do not constitute allied offenses of similar import. State v.Ferguson (1991), 71 Ohio App.3d 342, 594 N.E.2d 23; State v.Williams (1981), 2 Ohio App.3d 289, 441 N.E.2d 832. Finally, although the same conduct by appellant may be construed as both involuntary manslaughter and felonious assault they are offenses of dissimilar import under R.C. 2941.25(B) in that each requires proof of an additional element not present within the other offense: State v. Hawkins (June 19, 1998), Montgomery App. No. 16742, unreported. See also, Williams, supra.
Furthermore, "when an offense is defined in terms of conduct towards another, then there is a dissimilar import for each person affected by the conduct." State v. Phillips (1991), 75 Ohio App.3d 785,790, 600 N.E.2d 825 (citing State v. Jones (1985),18 Ohio St.3d 116, 118, 480 N.E.2d 408. In Phillips, the court stated that, because R.C. 2903.11(A)(2) defines felonious assault "in terms of the harm, or potential harm, visited upon another, there exists a separate, and dissimilar import with respect to each person subject to that harm or risk of harm." Phillips,supra, at 790. Likewise, aggravated robbery and involuntary manslaughter are also defined in terms of harm or potential harm to another. There exists a separate and dissimilar import with respect to each person subject to that harm or risk of harm.Id., State v. Brown (June 27, 1996), Cuyahoga App. No. 69149, unreported, 1996 WL 355296; State v. Carlisle (Nov. 16, 1994), Montgomery App. No. 13901, unreported, 1994 WL 645989 (each holding that, in cases involving multiple victims, involuntary manslaughter and felonious assault against different victims are not allied offenses of similar import). The felonious assault against Robert Cleaver had a separate and dissimilar import from the involuntary manslaughter offense involving the victim Robin Smith.
The assignment of error must be overruled; the judgment of the trial court is Affirmed.
FAIN, J., and YOUNG, J., concur.